UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOSEPH M. SALGADO,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | No. ED CV 12-374-PLA<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 19, 2012, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on April 12, 2012, and April 13, 2012.  The parties filed a Joint Stipulation on December 12, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on November 21, 1948. [Administrative Record ("AR") at 229.] Plaintiff completed one year of college after graduating from high school, and has past relevant work experience as a field worker. [AR at 52, 256.]

On October 19, 1993, plaintiff protectively filed an application for Supplemental Security Income ("SSI") payments.[1] [AR at 224-28.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 239-51.] A hearing was held on October 31, 1995, at which time plaintiff appeared with a paralegal representative and testified on his own behalf. [AR at 42-83.] On December 20, 1995, the ALJ determined that plaintiff was not disabled. [AR at 369-78.] Plaintiff requested review of the hearing decision. [AR at 379.] On December 3, 1996, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further administrative proceedings for the purpose of reassessing plaintiff's medical disability. [AR at 386-88.] A second hearing was held on August 13, 1997, at which time plaintiff again appeared with a paralegal representative and testified on his own behalf. [AR at 84-148.] A medical expert and a vocational expert also testified. [AR at 127-38.] On August 27, 1997, the ALJ determined that plaintiff was disabled and eligible for SSI payments. [AR at 509-19.] On November 5, 1997, the Social Security Administration issued a "Notice of Disapproved Claim," in which it notified plaintiff that he was not eligible to receive SSI payments because he was born in Juarez, Mexico and had never been legally admitted into the United States as an alien. [AR at 523-27.] Plaintiff filed a request for reconsideration on December 16, 1997. [AR at 528-29.] On April 21, 1998, the Social Security Administration denied plaintiff's request for reconsideration based on the finding that his place of birth was Juarez, Mexico. [AR at 532-36.] Plaintiff requested a hearing before an ALJ. [AR at

---

[1] Plaintiff first applied for SSI benefits on March 19, 1990. Although he was initially found eligible for those benefits, it was later determined that he was ineligible for the period of June 1990 through October 1992, based on his inability to establish the requirements of a citizen or national of the United States. [AR at 19-23.]

537-38.] Two hearings were then held before a second ALJ -- on February 25, 1999, and October 27, 1999. [AR at 149-200.] On March 30, 2000, the ALJ determined that plaintiff did not meet the requirements as a citizen or national of the United States, and therefore was not eligible for SSI payments. [AR at 674-78.] Plaintiff requested review of the hearing decision. [AR at 645.] On December 3, 2001, the Appeals Council denied plaintiff's request for review. [AR at 653-54.] However, on February 22, 2002, the Appeals Council concluded that a new hearing and decision were needed based on a complete evidentiary record, and thus granted plaintiff's request for review and remanded the case for further administrative proceedings. [AR at 658-62.] A hearing was held before a third ALJ on June 11, 2002, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 201-23.] On August 21, 2002, the ALJ found that plaintiff did not meet the requirements as a citizen or national of the United States, and thus denied him SSI benefits. [AR at 16-23.] Plaintiff once again requested review of the hearing decision. [AR at 15.] On September 26, 2003, the Appeals Council denied plaintiff's request for review. [AR at 9-12.]

        Plaintiff then filed a civil action in this Court, Case No. ED CV 03-1320-PLA, challenging the Commissioner's decision. On October 26, 2004, the Court remanded the matter for further proceedings, concluding that the August 21, 2002, decision of the third ALJ failed to provide appropriate reasons for rejecting the testimony of plaintiff and his family members and failed to properly consider evidence from the Mexican Consulate. [AR at 727-727H.] On December 30, 2004, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2004 Order. [AR at 728.] On September 29, 2005, a fourth hearing was held before a fourth ALJ. [AR at 741-61.] On June 6, 2006, that ALJ determined that plaintiff did not meet the requirements as a citizen or national of the United States, and therefore was not eligible for SSI payments. [AR at 695-701.]

        Plaintiff filed a second civil action in this Court, Case No. ED CV 06-848-PLA. Pursuant to a Stipulation to Voluntary Remand, the Court remanded the case for further proceedings on February 22, 2007, directing the ALJ to consider the certified birth certificate issued by the State of Texas and to provide another hearing on the issue of whether plaintiff is a United States citizen.

[AR at 1115-19.] On April 3, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2007 Order. [AR at 1120-23.] Plaintiff declined to appear for a hearing and requested a decision based on the evidence in the record. [AR at 766.] On January 25, 2008, the fourth ALJ again found that plaintiff did not meet the requirements as a citizen or national of the United States. [AR at 765-66.]

Plaintiff then filed a third civil action in this Court, Case No. ED CV 08-416-PLA. While that case was pending, on May 29, 2008, plaintiff filed a new application for SSI payments. [AR at 1218-24.] On October 8, 2008, the agency again found with respect to the new application that plaintiff was disabled and eligible for SSI payments. [AR at 1227-41.] Thereafter -- on August 19, 2009 -- in Case No. ED CV 08-416-PLA, the Court entered judgment for plaintiff and remanded the case back to the Commissioner for further proceedings, directing the ALJ to properly consider the evidence as a whole, including the lay witness statements of plaintiff's sisters, uncle, and brother-in-law. [AR at 1243-55.] On January 23, 2010, the Appeals Council remanded the case involving the 1993 application back to an ALJ, and also reopened the determination of eligibility in connection with plaintiff's 2008 application because it found that that determination was based on an erroneous application of internal agency policy. [AR at 1266-71.] On June 30, 2011, a fifth ALJ held a hearing, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 1564-96.] On November 15, 2011, the fifth ALJ again determined that plaintiff is not a United States citizen. [AR at 1182-94.] This action followed.

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

/

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ, in reaching the conclusion that plaintiff is not a United States citizen, used an improper legal standard and failed to properly weigh the evidence in the record. [Joint Stipulation ("JS") at 6-11.]

**A.    LEGAL STANDARD**

In order to be eligible for SSI benefits, a claimant must be "a resident of the United States" and, as relevant here, "a citizen or a national of the United States." 20 C.F.R. § 416.202.

In his decision, the ALJ stated that the Commissioner's regulations provide that he "must base decisions on Title XVI applications on the preponderance of the evidence offered at the hearing and otherwise included in the record. 20 C.F.R. § 416.1453(a)." [AR at 1187.] The ALJ then set forth a detailed discussion of the evidence in the record "tending to establish that [plaintiff] was born in the U.S.," and the evidence in the record "tending to establish that [plaintiff] was **not** born in the U.S." [AR at 1188-93 (emphasis in original).] Finding that "there is some credible evidence that [plaintiff] was born in El Paso, Texas," and "equally credible evidence that he was born in Juarez, Chihuahua, Mexico," the ALJ concluded that "[t]he evidence is, at best, equivocal

as to the exact location of [plaintiff's] birthplace." The ALJ therefore found that plaintiff "failed to prove by a preponderance of the evidence that he was born in the United States." [AR at 1193.]

Plaintiff contends that the ALJ "failed to cite any authority" specifically applying the preponderance of the evidence standard to the issue of whether an SSI claimant is a United States citizen, but simply "'bootstrapped' the Social Security regulations which describe the [ALJ's] duties in weighing medical evidence et cetera... ." [JS at 7.] However, 20 C.F.R. § 416.1453(a), in stating that the ALJ "must base the decision on the preponderance of the evidence," does not limit the application of this standard solely to the evaluation of medical evidence. See 20 C.F.R. § 416.1453(a) ("The administrative law judge shall issue a written decision which gives the findings of fact and the reasons for the decision. The administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."). In addition, plaintiff fails to set forth what standard he believes the ALJ *should* have applied, and does not cite any authority for the proposition that any standard *other* than the preponderance of the evidence applies to this issue. Indeed, the preponderance of the evidence is the default standard in civil and administrative proceedings. See Steadman v. Securities and Exchange Comm'n, 450 U.S. 91, 101 n.21, 101 S. Ct. 999, 67 L. Ed. 2d 69 (1981) ("'The use of the "preponderance of the evidence" standard is the traditional standard in civil and administrative proceedings. It is the one contemplated by the APA, 5 U.S.C. § 556(d).'") (quoting Sea Island Broadcasting Corp. v. Fed. Commc'ns Comm'n, 627 F.2d 240, 243 (D.C. Cir. 1980)); see also Jones ex rel. Jones v. Chater, 101 F.3d 509, 511-12 (7th Cir. 1996) (applying the preponderance of the evidence standard to the issue of whether the claimant had established that he was entitled to child's survivor benefits as the child of the deceased insured individual, citing Steadman and stating: "we have no doubt that preponderance of the evidence is the proper standard, as it is the default standard in civil and administrative proceedings"). Plaintiff has not cited any authority demonstrating that the ALJ should have applied any other standard to determine this issue, and thus his evidentiary standard argument fails.

/
/

**B.    THE ALJ'S EVALUATION OF THE EVIDENCE**

Next, plaintiff contends that the ALJ, in discussing the evidence in the record, improperly "fail[ed] to cite any evidence to which he attributed significant weight, let alone controlling weight," but simply assigned "'some weight' to numerous pieces of evidence both in favor and not in favor of U.S. citizenship," and then concluded that the evidence was equivocal as to plaintiff's birthplace. [JS at 8.]  The Court agrees with plaintiff that substantial evidence does not support the ALJ's overall treatment of the evidence insofar as he gave an insufficient reason to discount plaintiff's parents' statements, assigned weight to various pieces of evidence in an inconsistent manner, and improperly discounted certain evidence in the record.

*1.    Plaintiff's Parents' Statements*

Altogether, plaintiff's parents submitted four statements declaring that plaintiff was born in El Paso, Texas.  In a September 22, 1995, declaration, plaintiff's father and mother stated that plaintiff was born on a ranch in El Paso because they did not have a car with which to take plaintiff's mother to a hospital.  The declaration noted that the woman who helped with the delivery was a "[r]anch doctor." [AR at 606.]  In a March 11, 1996, affidavit, plaintiff's mother attested that plaintiff was born "on a ranch in El Paso, Texa[s]." [AR at 552.]  In a November 25, 1997, declaration, plaintiff's father and mother stated that on their way to visit the parents of one of them in Fresnillo, which is in the state of Zacatecas, Mexico, a Mexican immigration official asked where plaintiff was born, and his parents responded that he had been born in El Paso. [AR at 565.]  The officials told plaintiff's parents that plaintiff "had to be register[e]d in Juarez, Chihuahua in order to comply with the ... Mexican [i]mmigration policy ... which states that anybody traveling beyond 100 [miles'] limit into the interior of Mexico has to be registered as a [M]exican citizen or have a foreign traveling visa." Plaintiff's parents explained that: "That's why we decide[d] to register[] him in C[iuda]d Juarez, Chihuahua." [Id.]  Finally, in a July 24, 1998, affidavit, plaintiff's mother stated that on January 10, 1949, she and plaintiff's father decided to take plaintiff to Fresnillo, Zacatecas, "so that he could be treated for continuous ... high fevers." [AR at 632.]  She stated that upon preparing to board a bus for Fresnillo, she showed a Mexican immigration official documentation

for the entire family except for plaintiff, explaining that plaintiff "had been born in El Paso, Texas, and [they] had forgotten his documentation," but "did not want to go back because [he] had very high fevers," and they "wanted to take him as soon as possible to Fresnillo, Zacatecas, so that he could be cured by [her] aunt, [the] sister of [her] mother." [Id.] The immigration official informed plaintiff's parents that plaintiff "needed to have some identification in order to avoid additional problems at other immigration stops along the road," and referred them to the "Civil Registration [O]ffice," where they obtained a "ticket of registration" for plaintiff.[2] Plaintiff's mother stated that "[t]his was the only form of identification that the Civil Registration Department gave [them] in order for [plaintiff] to travel without problems and he was able to continue on our route to Fresnillo, Zacatecas." [Id.]

In his decision, the ALJ afforded "some weight" to "the various statements from [plaintiff] and his family," but did not afford them controlling weight "because there is evidence which contradicts these various statements." [AR at 1189.] In discussing the statements submitted by plaintiff's parents in particular, the ALJ stated that although plaintiff's parents "asserted that ... they ... took [plaintiff] to Fresnillo, Zacatecas, Mexico to visit family in hopes that his maternal grandmother could cure him using herbs," "[n]otably, his mother also somewhat contradictorily asserted in a separate document that she wanted the child to be treated by her aunt (her mother's sister), not her mother." [AR at 1188 (citing AR at 541-43, 632).] The first statement the ALJ refers to in this analysis, however, is plaintiff's sister Alicia's *recounting* of a statement made by plaintiff's mother -- not a firsthand statement made by plaintiff's mother. In the January 2, 1998, declaration cited by the ALJ, Alicia stated that when Mexican immigration officers asked her parents for identification for each family member prior to boarding the bus to Fresnillo, her mother "show[ed] [plaintiff] to the officer [and said:] [']Look[,] he is very sick, we are taking him to Fresnillo[,] Zacatecas[,] where my mother is a ranch doctor and uses herbs to cure people and we

---

[2] Plaintiff's mother and his sister Alicia represent that this is how plaintiff came to have a Mexican Birth Certificate, issued on January 10, 1949, which reflects that plaintiff was born on November 21, 1948, in Juarez, Chihuahua, Mexico [AR at 548-50]. [AR at 542-43, 632; see also AR at 1192.]

know she is going to save him.[']"  [AR at 542.]  As the ALJ, elsewhere in his decision (see discussion infra), gave *no* weight to statements about plaintiff's birthplace that the ALJ determined were hearsay, it was improper for him to discount plaintiff's parents' credibility by relying on plaintiff's sister's hearsay rendition of a statement plaintiff's mother may have made.  Moreover, plaintiff's parents consistently represented that plaintiff's place of birth was El Paso, Texas (as did Alicia), and also consistently represented that they brought him to Fresnillo in early 1949 to see family and to treat plaintiff for his high fevers.[3]  Because the ALJ did not identify any internal inconsistency within plaintiff's parents' firsthand statements, but only identified an inconsistency between plaintiff's parents' firsthand statements (that they wanted him to be treated by his mother's aunt), and a hearsay statement attributed to plaintiff's mother (that they wanted plaintiff to be treated by his maternal grandmother), substantial evidence does not support the ALJ's apparent discounting, based on this "inconsistency," of plaintiff's parents' statements about the location of plaintiff's birth.  This is particularly true in light of the fact that the ALJ acknowledged that plaintiff's parents' statements about plaintiff's place of birth were "based on personal knowledge."  [See AR at 1189.]  The ALJ gave no sufficient reason to discount plaintiff's parents' repeated representations that plaintiff was born in El Paso, Texas.

*2.    ALJ's Inconsistent Treatment of Certain Evidence*

Moreover, the ALJ was inconsistent in the manner he assigned weight to the evidence concerning plaintiff's place of birth.  Specifically, while the ALJ gave "some weight" to documents indicating that plaintiff was born in Juarez -- when there is no evidence that the individuals who completed those documents had any personal knowledge of where plaintiff was born -- the ALJ simultaneously: (1) completely rejected statements that plaintiff was born in El Paso made by individuals the ALJ found had no personal knowledge of plaintiff's birthplace, and (2) afforded only

---

[3]    In plaintiff's parents' November 25, 1997, declaration, they stated that they "registered" plaintiff in Juarez, Mexico while they were on their way to visit "my parents in Fresnillo, Zacatecas." They did not state therein, however, that they wanted any of their *parents* to treat plaintiff. [See AR at 565.]

9

1  "some weight" to plaintiff's family members who did have personal knowledge of plaintiff's birthplace.

Under the first contradictory evaluation, the ALJ discussed three sets of evidence (as relevant here) that he found "tend[] to establish that [plaintiff] was not born in the U.S." [AR at 1191-92 (emphasis omitted).] First, the ALJ examined an April 2, 1964, San Diego City Schools Application for Enrollment in a Special Program for the Handicapped (the "special school services application"), which listed plaintiff's birthplace as Ciudad Juarez, Chihuahua, Mexico. [AR at 1191 (citing AR at 1549-50).] The ALJ noted that the application was completed and signed by Martino and Margarita Castro as claimant's guardians. The ALJ also noted that plaintiff represented in an August 27, 2011, declaration that the Castros are now deceased [AR at 1553], and that plaintiff told the ALJ after the June 30, 2011, hearing that he does not remember the Castros very well, does not know how they came to be his guardians, and has no way of knowing how they had knowledge of where he was born. [AR at 1191-92.] The ALJ stated that the application's representation that plaintiff was born in Juarez "is certainly consistent with his Mexican birth certificate, suggesting that [the Castros] were either familiar with the document or were given this information from someone knowledgeable about [plaintiff's] birth." The ALJ further noted that "[t]here is no evidence that guardians seeking special school services in 1964 would have any incentive to fabricate [plaintiff's] place of birth or that there would be any benefit in asserting that he was a Mexican national, as opposed to an American citizen." The ALJ therefore afforded the special school services application "some weight ... to the extent that the statements significantly detract from his argument that those close to him have always known that he was born in the United States." [AR at 1192.]

Second, the ALJ discussed two San Diego Unified School District ("SDUSD") records, dated April 29, 1964, and September 13, 1965, respectively, the first of which lists plaintiff's birthplace as Juarez, Mexico [AR at 569], and the second of which lists plaintiff's birthplace as El Paso, Texas. [AR at 566.] In the second SDUSD record, based on the fact that the words "El Paso, Texas" were less faded and in a different font than the rest of the text, and on the fact that

1  a May 7, 1998, statement from the principal of plaintiff's former school stated that "[plaintiff's] place
2  of birth on his original school record was Juarez[,] Mexico" [AR at 578], the ALJ found that the
3  record was likely "altered to change [plaintiff's] place of birth from Mexico to the United States."[4]
4  He therefore afforded both records some weight "to the extent that they purport to establish that
5  [plaintiff] was born in Mexico." [AR at 1192.]

6  Third, the ALJ discussed two applications to obtain a Social Security number for plaintiff --
7  dated April 22, 1965, and April 5, 1968, respectively -- that listed plaintiff's birthplace as Juarez,
8  Mexico. [AR at 1191-92 (citing AR at 1382-83).] The ALJ noted that the mailing address on the
9  1965 application matched a mailing address on the September 13, 1965, SDUSD school record;
10 that the 1968 application reflected a mailing address that plaintiff testified was his sister's address;
11 that plaintiff's date of birth was correctly listed on both applications; and that plaintiff testified his
12 parents' names were correct as listed on the applications. [AR at 1191.] The ALJ further noted
13 that although both applications bear plaintiff's signature, plaintiff testified that he did not sign the
14 applications, and upon being questioned by the ALJ after the hearing, stated that he did not have
15 any "independent recollection" of the applications and did not know whether the Castros
16 completed them. [AR at 1191-92.] Based on the matching addresses, and the correct information
17 concerning plaintiff's parents' names and his date of birth, the ALJ found it "likely that whoever
18 submitted the applications had significant familiarity with [plaintiff] and his family," and therefore
19 afforded the applications "some weight." [AR at 1191.]

20 The first inconsistency in the ALJ's overall evaluation of the evidence is that the ALJ gave
21 *no* weight to statements that plaintiff was born in El Paso offered by plaintiff's sister Rosa, his
22 brother-in-law Charles Marmolejo, and his uncle Juan Galvan Castanon, because the ALJ found
23 that these statements were merely "hearsay," but simultaneously gave "*some* weight" to
24 documents indicating that plaintiff was born in Juarez when there is no evidence that those
25 statements were not *also* hearsay. [AR at 1191-92 (emphasis added).] Specifically, in rejecting

---

[4] The ALJ "accept[ed] [plaintiff's] testimony that he did not alter the record." [AR at 1192 (citing AR at 1583).]

11

Rosa's statement in a 1997 declaration that plaintiff was born in El Paso, the ALJ explained that because plaintiff testified that Rosa was born in September 1947, "scarcely one year before [plaintiff's] birth in November 1948[,] [the ALJ] therefore conclude[d] that Rosa had no independent memory of the events surrounding the pertinent trip and was simply reiterating hearsay from family anecdotes in her affidavit." [AR at 1188 (citing AR at 563-64).] Similarly, in apparently assigning no weight to Marmolejo's and Castanon's declarations also stating that plaintiff was born in El Paso, the ALJ stated, "these statements are also hearsay as there is no evidence that either person has personal knowledge of [plaintiff's] exact birthplace and can only offer their beliefs based on family anecdotes." [AR at 1188-89 (citing AR at 624-31, 669).] However, the ALJ gave "some weight" to the birthplace indicated on the special school services application completed by the Castros based on his conclusion that "they were either familiar with the document or were given [the information that plaintiff was born in Juarez] from someone knowledgeable about [plaintiff's] birth," despite the fact that any statement by the Castros based on "information from someone knowledgeable about [plaintiff's] birth" would *also* be hearsay. Likewise, the ALJ gave "some weight" to the place of birth reflected on the Social Security number applications because he found it "likely that whoever submitted the applications had significant familiarity with [plaintiff] and his family," and also assigned "some weight" to the place of birth reflected on the 1964 SDUSD record and the original 1965 SDUSD record (per the school principal), but failed to make any findings as to who completed the applications or was the source of the information on the school records.[5] Thus, there is no indication in the record that the statements concerning plaintiff's birthplace in those applications and those records, even if they originated from individuals who "had significant familiarity with [plaintiff] and his family," would not *also* have been hearsay.[6] The

---

[5] As noted supra, the ALJ found that the 1965 record was likely "altered to change [plaintiff's] place of birth from Mexico to the United States." [AR at 1192.]

[6] The Court notes that whether the 1965 SDUSD record was in fact altered does not change this analysis. That the 1965 SDUSD record (according to the school principal) may have originally reflected Juarez, Mexico as plaintiff's place of birth does not establish that such information was provided to the school by someone with personal knowledge of plaintiff's birthplace.

12

ALJ's inconsistent treatment of this evidence renders his findings with regard to this evidence unsupported by substantial evidence.

The second inconsistency in the ALJ's evaluation of the evidence is that while he gave "some weight" to the special school services application, the 1964 SDUSD record, and the Social Security number applications -- which he did not find were based on personal knowledge -- he assigned the *same* amount of weight to the statements from plaintiff's parents and his sister Alicia that plaintiff was born in El Paso, which the ALJ acknowledged were based on personal knowledge. In discussing the evidence "tending to establish that [plaintiff] was born in the U.S.," the ALJ stated that out of all the statements submitted by plaintiff's family members and third parties, "only those statements from his parents and (possibly) his then-5[-and-]1/2[-]year[-]old sister Alicia could have been based on personal knowledge." [AR at 1189.] The ALJ did not provide any reason to give those statements no more than "some weight,"[7] particularly in light of the fact that the ALJ assigned the same amount of weight to much of the evidence that he assigned any weight at all, and in light of the ALJ's acknowledgment that out of *all* the evidence submitted in this case, only the statements of plaintiff's parents and possibly his sister Alicia were based on personal knowledge. [See AR at 1188.] The ALJ's treatment of the evidence in this regard also lacks support by substantial evidence.

### 3. The ALJ's Improper Discounting of Other Evidence

The ALJ's inconsistent treatment of the hearsay evidence in the record undermines his evaluation of other evidence in the record, including evidence explaining the existence of plaintiff's Mexican birth certificate, and a birth certificate for plaintiff issued by the state of Texas.

First, with respect to plaintiff's Mexican birth certificate, plaintiff's mother and Alicia explained in separate declarations that they had to register plaintiff with the Mexican "Civil Registration Office" by obtaining a "ticket of registration" at the border in order to travel into Mexico with plaintiff in 1949. [AR at 542-53, 632.] In addition, in an August 13, 2002, letter, the Acting

---

[7] As discussed supra, the sole reason offered by the ALJ to discount plaintiff's parents' credibility was insufficient.

13

1 General Consul of Mexico stated that an affidavit submitted by plaintiff's mother was "strongly
2 consider[ed] [by him to be] truthful, according to [the] experience that [the Consulate] [has] had
3 in the past in other similar cases." [AR at 680-81.] Specifically, the General Consul stated that
4 "when Mexicans and their children born in the U.S. traveled back for some reason to our Country,
5 and they found themselves in need to have access to [h]ealth [s]ervices ... , they were required
6 to show their Mexican birth certificate ... ; therefore the only alternative left to make things easier
7 was to register their U.S.[-]born children in Mexico, as [if] they were born there." [AR at 680.]

8 In his decision, the ALJ stated that "[plaintiff's] family and the Mexican General Consul have
9 provided a reasonable explanation for why [plaintiff's Mexican birth certificate] may have been
10 created even if [plaintiff] was born in the United States," but nevertheless concluded that the
11 Mexican birth certificate is "probative evidence tending to establish that [plaintiff] was actually born
12 in Mexico because Juarez is listed as [plaintiff's] actual birthplace in other documents, including
13 the two applications for a Social Security number, his school records and the statement of his
14 guardians, the Castros." [AR at 1192-93.]

15 As discussed supra, there is no indication that the statements concerning plaintiff's
16 birthplace in the two Social Security number applications, plaintiff's 1964 SDUSD record and his
17 1965 SDUSD record in its original form (according to the school principal), and the special school
18 services application, are not hearsay. As such, the ALJ did not properly rely on them to offset his
19 finding that plaintiff's family and the Mexican General Consul gave a "reasonable explanation" for
20 why plaintiff's Mexican birth certificate "may have been created." The ALJ therefore gave no
21 legally adequate reason to conclude that plaintiff's Mexican birth certificate is "probative evidence
22 tending to establish that [plaintiff] was actually born in Mexico." [AR at 1192.]

23 Second, the ALJ assigned "minimal weight" to a birth certificate issued by the State of
24 Texas on May 23, 1996 -- which was initially issued with an addendum indicating that the State
25 Registrar had received information (i.e., a copy of plaintiff's Mexican birth certificate) contradicting
26 the information shown on the birth certificate. [AR at 1189 (citing AR at 557, 1108-14).] The ALJ
27 further assigned minimal weight to an October 9, 2006, Texas Hearing Examiner Order ordering
28

14

that the addendum be removed because the "conflicting information received by the State Registrar concerning [plaintiff's Texas birth] certificate was rebutted." [AR at 1189 (citing AR at 1108-14).] The only reason provided by the ALJ for these weight assignments was that: "the record strongly suggests that this Examiner did not review all of the evidence before me which suggests that [plaintiff] was, in fact, born in Mexico." [AR at 1189.] In the October 9, 2006, order, the hearing examiner discussed plaintiff's parents' 1995 affidavit, plaintiff's mother's 1998 declaration, an affidavit from plaintiff's sister Alicia, and an affidavit from Castanon -- plaintiff's uncle. [AR at 1110-11.] The evidence not discussed by the hearing examiner that the ALJ found tends to establish that plaintiff was born in Mexico consisted only of: the two Social Security number applications, the two SDUSD records, and the special school services application. [Compare AR at 1191-93 with AR at 1109-12.] Because there is no indication that the statements contained therein concerning plaintiff's birthplace were not hearsay, the ALJ's rejection of plaintiff's Texas birth certificate on the basis that the hearing examiner did not consider that evidence is not supported by substantial evidence.

    *4.    Conclusion*

For the reasons above, substantial evidence does not support the ALJ's conclusion that "[t]he evidence is, at best, equivocal as to the exact location of [plaintiff's] birthplace" and that plaintiff "failed to prove by a preponderance of the evidence that he was born in the United States." See Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

**V.**

**REMAND FOR AWARD OF BENEFITS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989, as amended Oct. 19, 1989). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke v. Barnhart, 379 F.3d 587, 593-96 (9th Cir.

2004). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke, 379 F.3d at 593. Specifically:

> the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id.

As discussed supra, the ALJ failed to provide any legally sufficient reason to discredit plaintiff's parents' statements that plaintiff was born in El Paso, Texas. When those statements are credited as true, there is no outstanding issue that remains to be resolved before determining that plaintiff is entitled to benefits. The Commissioner has already thrice found that plaintiff is disabled. [See AR at 19-23, 519, 1227-41.] The ALJ's November 15, 2011, decision stated that the only issue before the ALJ was "whether [plaintiff] is a United States citizen" [AR at 1187], which would clearly entitle him to SSI payments under 20 C.F.R. § 416.202. Thus, it is proper to credit as true plaintiff's parents' statements that plaintiff was born in El Paso, Texas, and to remand this case for an immediate award of benefits. See Benecke, 379 F.3d at 596 ("[b]ecause there is no remaining issue that must be resolved and it is clear from the record that Benecke is entitled to disability benefits," the district court should have remanded for the award of benefits).

The Court notes that while this is not a case in which plaintiff's parents' statements concern his subjective symptoms and ability to work (see, e.g., Smolen, 80 F.3d at 1288-89, 1292), the policy reasons underlying the credit-as-true rule are nevertheless applicable here. "[T]he purpose of the credit-as-true rule is to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result." Vasquez v. Astrue, 572 F.3d 586, 594 (9th Cir. 2008, as amended July 8, 2009). In addition, where the record establishes that a claimant is entitled to benefits, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play

again' system of disability benefits adjudication." See Benecke, 379 F.3d at 595. Finally, "applicants for disability benefits often suffer from painful and debilitating conditions, as well as severe economic hardship," and thus "[d]elaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage -- financial, medical, and emotional." Varney v. Sec'y of Health & Human Servs. (Varney II), 859 F.2d 1396, 1401 (9th Cir. 1988). Here, plaintiff has already been found by the Commissioner -- three times -- to be disabled, and the issue in question for the last 20 years has been whether plaintiff is entitled to SSI payments by virtue of being a United States citizen. With respect to this application alone, the Commissioner has had five opportunities to render a determination on this issue, and has held five hearings to that end. The fifth ALJ still failed to render a decision supported by substantial evidence. Thus, the Court finds that the policy rationale underlying the credit-as-true rule warrants a remand for the immediate payment of benefits in this case. See, e.g., Benecke, 379 F.3d at 595 ("Requiring remand for further proceedings any time the vocational expert did not answer a hypothetical question addressing the precise limitations established by improperly discredited testimony would contribute to waste and delay and would provide no incentive to the ALJ to fulfill her obligation to develop the record.").

/
/
/
/
/
/
/
/
/
/
/

## VI.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for the award of benefits is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the award of benefits and any other action consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 20, 2013

                                      PAUL L. ABRAMS
                         UNITED STATES MAGISTRATE JUDGE